Good morning Mr. Stein, you have two minutes for rebuttal and you can begin whenever you are ready. Yes, may it please the court, my name is Joel Stein, I appear for the appellant John Ragano, and with the court's permission also seated at council table is Jonathan Cruz, who was authorized by the court to act as my paralegal in this matter. Before trial of this case, the district court judge excluded some evidence consisting of text messages between the government's most important witness, Vincent Martino, and FBI agents. He excluded the text messages notwithstanding the fact that the text messages were highly probative of the defense in this case, the defense that Mr. Ragano lacked the intent to commit the crime of extortion. How does the state of the mind of the victim bear relevance to whether your client had intent? It doesn't. I'm not referring to the state of mind of the victim. That's the only thing the text messages would show, right? If the text messages are communications between the victim and the FBI regarding the meeting, how does that bear on your client's intent? I don't understand. Obviously, you covered this in your briefs, it would be relevant to an entrapment defense, but you said I don't know over and over again to the district court, we're not asserting an entrapment defense. So how is it relevant on the issue of intent? The text messages have to be read in the context of the most important event in this case, which occurred on July 5th, 2023, when Mr. Martino, the cooperating witness, confronted Mr. Ragano at his place of business. You cannot understand all of the circumstances surrounding the July 5th encounter unless you also read the text messages, which created a scenario designed to lure Mr. Ragano into a confrontation, which is exactly what occurred. So the text messages cannot be read in isolation. The text messages have to be read in the context of the most important incident in this case. What is that thing? You say read in context or understood in context. Okay. But what is the conclusion you wanted the jury to draw or you think the jury could have drawn about what your client said and did if they had read the text messages? If they had read the text messages, the jury would have understood that Mr. Ragano was acting reflexively in response to the accusations that Mr. Martino, the cooperating witness, made about Mr. You mean impetuously without having had any moment to think? What do you mean reflexively? That suggests a lack of thought and consideration. Is that what you're saying? It was a spur of the moment, impetuously? That's what occurred. Mr. Martino entered Mr. Ragano's place of business, started making accusations that Mr. Ragano, false accusations. So why would the text show impetuosity on the part of your client as opposed to just listening to the recording? It would tell us whether it was impetuous or not. What was in the victim's mind is not going to help us understand whether your client was impetuous. It's not what was in the victim's mind, Mr. Martino. Right. It's the circumstances of the agents acting together. But why would what is in the victim's mind change what was said to your client? He didn't know what the cooperating witness had said to the agents, right? You're not claiming that he knew what they had said to each other, correct? Correct. So he could only react to what is said to him, right? He meaning Mr. Ragano? Your client could only react to what was said to him, right? Correct. So what is it about those texts that would reveal to the jury more about what was known to your client? Because the jury would understand that this scenario was contrived by the government and Mr. Martino. But I guess my point is if your client didn't know that it was contrived, then how would this speak to your client's state of mind? Unless you're saying he did know secretly, but you would need evidence tying the text to his state of mind.  He did not know that they were contrived. So how could that make a difference then? He either says things in response to what is told to him or he doesn't. Because in order for the jury to have fully understood all the circumstances surrounding the encounter on July 5th. They have the tape, though. That's all they need to understand is what led up to him making the comments that he made. Suppose there was a meeting where the victim said, I'm going to tell him I'm never going to pay that money. Watch what's going to happen. He's going to get really upset. He might hit me. Right? Suppose that was the discussion. Why would that matter if he went into the meeting and did that and your client started hitting him because of that? He went into the meeting. I'm going to provoke him. I'm going to tell him I'm never going to pay that money. Why would that be relevant other than an entrapment defense? Well, as Your Honor correctly noted, we never asserted an entrapment defense. No, just my hypothetical. Suppose the meeting before was I'm going to tell him I'm never paying that money. He's going to get really mad. He may even hit me. So this is what I'm going to do. Does the jury need to know that in order to assess whether or not your client in response to him saying I'm never going to pay the money was still fearing him? The jury needed to know that so that they could understand that what happened on July 5th was not an intention by Mr. Regano to commit the crime of extortion. What was it intent to do at that meeting? What was the intent? Mr. Regano's intent as the circumstances developed at the encounter was to deny the false accusation by Mr. Martino. When he said I'm going to slap, so if I slap the crap out of you, you're going to tell on me and says you owe me the effing money. Let's see how you're going to do when I get out. So when Mr. Regano said I'm going to slap you in so many words, that was in reference to the accusation false that Mr. Regano was cooperating. The reference afterwards to the jury had the opportunity. You made that argument to the jury, right? The jury heard what preceded those comments. They heard what preceded those comments, and there was a discussion about cooperation. The jury heard that, right? Yes. All right. You made the argument to the jury. He wasn't, when he said he was going to slap him, he wasn't talking about the money. He was talking about because he accused him of cooperating. That argument was made to the jury, right? Correct. So why did they need the text messages? They rejected that. The text messages had nothing to do with what your client heard and what he was reacting to. They had to do with Mr. Regano's defense of lack of intent, a constitutional argument, and his constitutional right to effectively cross-examine Mr. Martino, the most important government witness in this case. By having those text messages to confront Mr. Martino with a false accusation about cooperation, the jury, the judges of credibility, would have been in a position to fully evaluate, with this additional information, Mr. Martino's credibility as a witness, having falsely accused Mr. Regano of cooperation. So there's two constitutional arguments. Can you generally impeach using extrinsic evidence? He could have said while the cooperator was on the stand, isn't it true, sir, that you think this, you said this, you did this. You could do all that. You couldn't introduce extrinsic evidence, though, correct? Isn't that the general rule for impeachment purposes? You can confront the witness with the statements that he previously made. If he denied making those statements, then the door would have been open to the admission of the text messages to show that what he just said was false. And did that cross-exam happen? Well, it did not happen because we were precluded from using the text messages. No, I'm saying not from using it, but just even asking about it? You weren't even allowed to ask about it? About cooperation? Yes. Yes, we were allowed to pursue that. He persisted in claiming that Mr. Regana was cooperating, which was completely false. He said that he based his belief that Mr. Regana was cooperating because he, quote, heard it on the street, giving him plausible deniability. There was nothing in the text messages which started in January of 2023 leading up to July 5th, 2023. There was not one word of Mr. Martino's belief that Mr. Regana was cooperating. And even in the FBI 302s concerning interviewing Mr. Martino, there was no mention of his belief that Mr. Regana was cooperating until he was interviewed after the July 5th encounter. All right. Thank you. We'll hear from the governor. May it please the Court. My name is Devin Lash. I'm an assistant United States attorney in the Eastern District of New York, and I represented the government before the district court. I'd like to begin by addressing, Judge Nardini, one of your questions to Mr. Stein. You asked a question about the conclusion that the jury could have drawn here accepting Mr. Stein's argument and his argument that the jury couldn't understand the circumstances on July 5th without seeing those text messages. The defendant had ample opportunity to cross-examine Mr. Martino, the witness that we're discussing, about his cooperation with the FBI and his intent going into the July 5th meeting. Before jury selection began on November 7th, the district court said, I've allowed cross-examination about the July 5th encounter. When you went in there, you knew what you were doing and what you were going to say, and that's in reference to Mr. Martino. And that's transcript pages 6 and 7. The following day before the government called its first witness, the defendant revisited the district court's evidentiary ruling and sought to clarify the ruling and stated that they intended to argue that Mr. Martino went in with a plan to provoke the defendant. And the court responded by saying, I've already told you you can make that argument. Make whatever argument you can from the recording plus your cross-examination of the witness. The court later said, you can ask Martino anything. And that's on transcript page 302 and 303. The point is that Mr. Stein argued that the defendant's constitutional right to raise this argument was somehow limited by the district court's ruling. It was not. He could have asked Mr. Martino any of these questions and, in fact, in closing argument, did argue that Mr. Martino went in with a plan to provoke the defendant and succeeded, and that's why the defendant threatened him about the money. I'll move on to another question that you asked Judge Bianco about intent here. And that was the defendant's intent when he made those statements. And I'll just refer you to the reporting of July 5th. And what the defendant said to Mr. Martino was, you owe me my effing money. Let's see how you're going to do when I get out. That's in Government Exhibit 130A. And then at the end of the conversation, he said, I'll see you when I get out, tough guy. Don't forget I know where you're at now. Those threats were specifically about the loan and about the money. The defendant argued that they were not to the jury, and the jury rejected that conclusion in finding the defendant guilty. Finally, I'll say that even if the court was wrong about the preclusion of the text message, which we submit the judge was not, you don't need to reach the issue because it was harmless. It was not disputed at trial that the defendant was a banana crime soldier, that the defendant threatened the victim in connection with past loans, the defendant discussed his own violent outbursts to the victim, and the defendant attempted to collect the loan in 2023. And, of course, the July 5th recording, which I've cited. If there are no further questions, the government will. I just had a question.  They did raise this issue in the rebuttal summation where the prosecutor said that this idea that Martino and FBI were trying to come up with evidence and that Martino was trying to lure John Regano into committing crimes is even more desperate and is completely contradicted by the actual evidence in this case. Wasn't it a little dangerous for the government to kind of go there knowing that the text message had been excluded and that at least that was some evidence that there was a provocation that was planned? Wouldn't it have been better for the government to just say whether or not there was provocation is irrelevant rather than suggest that there was no evidence of it? Yes, Your Honor. And the government did say that. At the end. A few lines down, yes. Yes. But that... Why even engage on something where the judge said this is irrelevant, excluded evidence, and the government stands up and says there's no evidence of that? It's kind of a dangerous thing for the government to do, isn't it? Well, that specific statement was in reference to the defense closing in which they argued that Regano only threatened Martino because Martino provoked the defendant with this false accusation of cooperation. So the government... In the context of the cooperation issue, is that what you're telling me? Exactly, Your Honor. Okay. So when the government said Mr. Martino was trying to lure John Regano into committing crimes, what was unsaid here is by false accusations. And we know that because immediately after that statement, if you continue to read into the rebuttal summation, the government said, first of all, you heard Martino testify that he did in fact think John Regano had cooperated with the government. And not only did Mr. Martino testify to that fact on direct, but the government called an FBI special agent who also testified that Mr. Martino had told him repeatedly he believed that John Regano had cooperated in some form with the government. All right. Thank you, Your Honor. Seeing no further questions, we'll rest on our submission. All right. Mr. Stein, you have two minutes in rebuttal. Just in reference to the courts pointing out that during the July 5th encounter, Mr. Regano said words to the effect, I'll see you when I get out. You have to understand the context in which that was said. That was in reference to the accusations about cooperation, which inflamed Mr. Regano. He admittedly was Well, he said, you owe me the effing money. Let's see how you're going to do when I get out. So isn't that, it's in the same sentence that you owe me the money, right? I'll see you when you get out is a reference to Mr. Regano's anger as a member of organized crime of being accused of cooperating in a public place, the public place being Mr. Regano's place of employment. So that particular I'll see you when I get out, if it's read in the context of the entire transcript. That's why we have juries, right? That's why we have juries. If there's two different entrances that can be drawn from a recording, both sides get up and the jury decides which inference they think is the correct one, right? Certainly, Judge. All right. So that's what happened here, right? You argued to the jury that that wasn't about the money, that was about cooperation. And apparently they rejected that, right? We'd have to find that irrational. The jury could not conclude that it was about the money, that there's no basis for doing that. And I think that would be a tough thing to conclude given that it's in the same sentence, right? There might be some larger context you're trying to point them to, but it was in the same sentence. You owe me the effing money. Let's see how you're going to do when I get out. You're going to duck me right now. I'm not ducking you. So if I slap you, you're going to tell on me. This is exactly why the text messages are important, because the jury would have understood that what this was about was the accusations about cooperation, which was a preconceived plan by Mr. Martino and the agents. And the jury did not understand that because they didn't have the benefit of the text messages. All right. All right. Thank you both for your decision.  Have a good day.